United States District Court
Southern District of Texas

**ENTERED**

January 17, 2017

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSERVAIR, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-1496 |
| | § | |
| QUANTEM FBO GROUP–HOUSTON, LLC, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Conservair, Inc. sued Quantem FBO Group – Houston, LLC, in Texas state court, seeking a declaratory judgment that Quantem was not entitled to the return of a $100,000 earnest-money deposit. (Docket Entry No. 1-1, Ex. A). Quantem timely removed the case to this court. (Docket Entry No. 1). Conservair moved for summary judgment, Quantem responded, and Conservair replied. (Docket Entry Nos. 12, 24, 25). For the reasons explained below, the court cannot decide the motion for summary judgment without additional briefing by the parties on whether the contract is predominantly one for the sale of goods—and subject to the Ohio UCC—or predominately for the sale of other things—and therefore subject to the Ohio common law of contracts. Conservair, the movant, must submit supplemental briefing on the issue identified, of no more than ten pages, by **February 10, 2017**. Quantem must file its response, subject to the same page limit, by **March 3, 2017.**

**I.     Background**

Conservair, a Texas company, owned and operated a fixed-base operation (FBO) at the Lone Star Executive Airport in Conroe, Texas. Quantem, an Ohio company, sought to purchase the

Conroe FBO.  The parties entered into an asset purchase agreement on May 11, 2015.  (Docket Entry No. 21-1, Ex. A).  The APA had several provisions relevant here.  The deal would close on or before May 31, 2015.  (*Id.* ¶ 3.1).  The closing date could be extended by mutual agreement of the parties or by written notice by Quantem to Conservair stating that Quantem required reasonable additional time to satisfy the conditions of the agreement.  (*Id.*).

The APA also provided several conditions precedent, waivable at Quantem's option, to Quantem's obligation to close.  (*Id.* at ¶ 8).  One of those conditions precedent to closing was Quantem's right to conduct a due-diligence review.  (*Id.* at ¶ 8.1).  The APA could be terminated if one party gave written notice that, as of the closing date, "the conditions precedent to the performance of the obligations of the party giving such notice shall not have been fulfilled and shall not have been waived by such party."  (*Id.* ¶ 11).  The APA could be modified or amended, "but only in writing, signed by the parties . . . ."  (*Id.* ¶ 14.5).

On May 29, 2015, Quantem gave written notice under ¶ 3.1 of the APA that it needed more time to conduct its due diligence.  That notice extended the APA's closing date.  (Docket Entry No. 24-2, Ex. B at ¶ 3).  In June of 2015, Quantem and Conservair both signed a written amendment setting a new closing date of September 15, 2015, and requiring Quantem to pay a $100,000 earnest-money deposit.  (Docket Entry No. 24-3, Ex. C).  The deposit would be applied to the purchase price at closing.  Conservair could keep the money if the deal did not close as a result of Quantem's material breach of its obligations under the APA.  (*Id.*).  If the deal did not close because the conditions precedent to Quantem's obligation to close had not been satisfied or waived, the deposit would be returned to Quantem.  (*Id.*).

The deal did not close on or before September 15, 2015.  The parties disagree on what

happened, and whether those occurrences have legal significance. Conservair claims that Quantem "did not seek a second extension of the Agreement prior to the Closing Date, and failed to terminate the agreement in the timeframe provided by the Agreement." (Docket Entry No. 21 at 4). Instead, Conservair says that Quantem waited until February of 2016, and then purported to give notice of its intent to terminate the agreement under ¶ 11. (*Id.*). According to Conservair, Quantem is not entitled to a refund of its $100,000 earnest money deposit.

Quantem disputes this version and instead claims that the parties orally agreed to extend the closing date in a September 10, 2015 conference call, and that, after the call, the parties continued cooperatively working toward closing for another several months. (Docket Entry No. 24 at 5). Quantem presented several pieces of summary judgment evidence. They included:

- The affidavits of Ken Allison, Quantem's CEO, (Docket Entry No. 24-5, Ex. E), and Blake Fish, Quantem's president (Docket Entry No. 24-4, Ex. D), stating that, during a September 10, 2015 conference call, both parties agreed to extend the closing date and to continue to cooperate on due diligence.

- The affidavit of Frank Pisano, Quantem's CFO, (Docket Entry No. 24-2, Ex. B), stating that, during October, November, and December of 2015, he continued to communicate with Conservair about due diligence issues, and that Conservair continued to provide requested due diligence information. (*Id.*).

- Copies of some of the correspondence described in Pisano's affidavit. (Docket Entries No. 24-6 through 24-16, Exs. F-P).

Fish and Allison both stated in their affidavits that in December of 2015 and January of 2016, based on the information Quantem's due diligence process uncovered, Quantem sent Conservair two

new proposals for transaction terms that, in their view, more fairly distributed the risk.  (Docket

Entries No. 24-4 and 24-5; Ex. D at ¶¶ 4-9, Ex. E at ¶¶ 5-6).  Both Fish and Allison stated

specifically that, during these later discussions, the parties discussed the fact that they were still

operating under the APA, amended with respect to extending the closing date past September 15,

2015.  (*Id.*).  They stated further that, after the fall 2015 efforts to reach an agreement failed,

Quantem concluded that it was dissatisfied with the results of its due-diligence work and exercised

its ¶ 11 right to terminate the APA in February of 2016.  (*Id.*).  Quantem maintains that it is entitled

to the return of its $100,000 earnest money deposit.

This summary judgment dispute presents a narrow issue: whether Quantem has demonstrated

a genuine factual dispute material to determining whether the parties validly extended the closing

date beyond September 15, 2015.  Quantem maintains that the parties' oral agreement and

subsequent course of dealing create a triable issue of fact on that point.  Conservair maintains that

there was no oral agreement to extend the closing date, because oral statements could not create an

enforceable agreement because the contract required any modification to be made in writing and

signed by both parties.

## II.     The Unresolved Legal Issue

The parties agree that this diversity case is governed by Ohio substantive law.[1]  Neither party

has weighed in on whether Ohio's Uniform Commercial Code on sale of goods or Ohio's common

---

[1] In its reply brief, Conservair notes that Quantem did not raise its modification argument in its
pleadings.  (Docket Entry No. 25 at 1).  But Conservair does not actually claim, or provide any authority
to show, that Quantem has waived the argument by that failure.  Nor could it; under Ohio law, oral
modification of a contract is not an affirmative defense that must be pled under Federal Rule of Civil
Procedure 8(c).  *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir.
2007) (substantive state law governs whether an argument is an affirmative defense for the purpose of
Rule 8(c)); *Copeland Corp. v. Choice Fabricators Inc.*, 345 F. App'x 74, 78 (6th Cir. 2009) (Sutton, J.)
("Ohio treats modification as an issue of fact, not as an affirmative defense.").

law on contracts applies to the APA.  The distinction matters.  The Ohio UCC provision for contract modification enforces a no-oral-modification clause in a contract.  A later oral modification is not enforceable.  *Gomez v. Huntington Trust Co.*, 129 F. Supp. 2d 1116, 1127 (N.D. Ohio 2000) (citing Ohio Rev. Code Ann. § 1302.12).  Cases not governed by the UCC may have a different result.  *See Exact Software N. Am., Inc. v. Infocon Sys., Inc.*, No. 3:03CV7183, 2004 WL 952876, at *5 (N.D. Ohio Apr. 16, 2004).  In common-law cases, Ohio courts have regularly permitted parties to prove oral modifications despite no-oral-modification provisions, reasoning that an oral agreement to modify the contract implicitly waives the no-oral-modification clause.  *See Wells Fargo Bank, N.A. v. Smith*, 2012-Ohio-1672, ¶¶ 35-49 (collecting and analyzing cases).  The party seeking to prove an oral modification must show: "(1) that the alleged oral modification of the underlying contract has been acted upon by both parties; and (2) one of the parties has suffered an injury due to detrimental reliance upon the modification."  *Id.* ¶ 35.

The Ohio codification of Article Two of the UCC, Ohio Rev. Code Ann. § 1302, covers the sale of "goods," defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action."  *Id.* § 1302.01(8).  Contracts for the sale of things other than "goods" are governed by the Ohio common law of contracts.  The APA includes both UCC goods, such as "Seller's parts and related supplies, and inventory, including oil and fuel . . ." and "furniture" (Docket Entry No. 24-1, Ex. A at ¶ 1.1(a)-(b)), and other things, such as "Seller's customer lists and customer records" and "Seller's rights needed to operate the FBO including, without limitation . . . licenses and permits, consents, intellectual property, trade secrets, intangible business assets and goodwill[,]" (*Id.* ¶ 1.1(c), ¶ 1.1(f)).

In cases that involve, as here, "mixed" contracts, Ohio courts apply a predominance test.  If the contract's primary purpose was the sale of goods, the UCC applies.  If the primary purpose was

the sale of other things, the common law applies.  *See Allgood Mun. Equip. Supply v. Artino*, No. 18184, 1997 WL 625481, at *6 (Ohio Ct. App. Oct. 1, 1997); *cf. The Scotts Co. LLC v. Farnam Companies, Inc.*, 659 F. Supp. 2d 913, 924-25 (S.D. Ohio 2009) (relying on *Allgood* to hold that, because a contract for sale of a business line only incidentally concerned the sale of goods, the common-law contract statute of limitations, not the UCC statute of limitations, governed). Predominance is a factual issue determined by review of the contract's language and the surrounding circumstances.  *Allgood*, 1997 WL 625481, at *6.  But, when there are no disputed facts, the court can determine as a matter of law which aspect of the transaction predominated.

The parties did not brief this issue for summary judgment, and the record presented is not a sufficient basis for the court to rule.

## III.    Order for Supplemental Briefing

Because this issue is central, and likely dispositive, the court invites the parties to file briefs of ten pages or less explaining their views on what body of Ohio contract law the court should apply in light of the facts of this case.  Docket call and all associated deadlines are continued until the court resolves the motion for summary judgment.  If necessary, the court will set new deadlines when it issues an order on summary judgment.

SIGNED on January 17, 2017, at Houston, Texas.

Lee H. Rosenthal

Chief United States District Judge