IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONSERVAIR, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-1496 |
| | § | |
| QUANTEM FBO GROUP–HOUSTON, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Conservair, Inc. sued Quantem FBO Group – Houston, LLC, in Texas state court, seeking a declaratory judgment that Quantem was not entitled to the return of a $100,000 earnest-money deposit. (Docket Entry No. 1-1, Ex. A). After Quantem timely removed to this court, Conservair moved for summary judgment, Quantem responded, and Conservair replied. (Docket Entry No. 21, 24, 25). The court ordered supplemental briefing on an unbriefed issue, and the parties filed supplemental briefs. (Docket Entries No. 27, 28, 31, 32). Conservair filed a motion to strike Quantem's surreply to the request for supplemental briefing, to which Quantem responded. (Docket Entry No. 33, 34). The motion to strike is denied because Conservair was able to, and did, respond. Having considered the motions, responses, replies, and surreplies; the summary judgment record; and the applicable law, the court denies Conservair's motion for summary judgment, for the reasons set out in detail below.

**I.    Background**

Conservair, a Texas company, owned and operated a fixed-base operation (FBO) at the Lone

1

Star Executive Airport in Conroe, Texas. Quantem, an Ohio company, sought to purchase the Conroe FBO. The parties entered into an Asset Purchase Agreement on May 11, 2015. (Docket Entry No. 21-1, Ex. A). The Agreement provided that the sale would close on or before May 31, 2015. (*Id.* ¶ 3.1). The closing date could be extended by the parties' mutual agreement or by Quantem giving Conservair written notice stating that Quantem needed a reasonable amount of additional time to satisfy the conditions of the Agreement. (*Id.*).

The Agreement set out several conditions precedent to Quantem's obligation to close. Quantem could waive the conditions. (*Id.* at ¶ 8). The conditions included Quantem's right to conduct satisfactory due diligence before closing. (*Id.* at ¶ 8.1). The APA could be terminated by a party giving written notice that, as of the closing date, "the conditions precedent to the performance of the obligations of the party giving such notice shall not have been fulfilled and shall not have been waived by such party." (*Id.* ¶ 11). The Agreement stated that it could be modified or amended, "but only in writing, signed by the parties . . . ." (*Id.* ¶ 14.5).

On May 29, 2015, Quantem gave written notice, under ¶ 3.1 of the Agreement, that it needed additional time to conduct its due diligence. That notice extended the Agreement's closing date. (Docket Entry No. 24-2, Ex. B at ¶ 3). In June 2015, Quantem and Conservair executed a written amendment to the Agreement, setting a new closing date of September 15, 2015, and requiring Quantem to pay a $100,000 earnest money deposit to be applied to the purchase price if the sale closed, and to be kept by Conservair if the sale did not close because Quantem materially breached its obligations under the Agreement. (Docket Entry No. 24-3, Ex. C). (*Id.*). As amended, the Agreement also provided that if the sale did not close because the conditions precedent to Quantem's obligation to close had not been satisfied and were not waived, the deposit would be returned to

2

Quantem. (*Id.*).

The sale did not close on or before September 15, 2015. The parties disagree on what happened around the closing date and the legal significance of those occurrences. Conservair argues that Quantem "did not seek a second extension of the Agreement prior to the Closing Date, and failed to terminate the agreement in the timeframe provided by the Agreement." (Docket Entry No. 21 at 4). Instead, Conservair says that Quantem waited until February 2016 and then purported to give notice of its intent to terminate the Agreement under ¶ 11. (*Id.*). Conservair asserts that as a result, Quantem is not entitled to a refund of its $100,000 earnest money deposit.

Quantem has a different account. According to Quantem, the parties orally agreed to extend the closing date in a September 10, 2015 conference call, and they continued to cooperatively work toward an agreement over the next several months. (Docket Entry No. 24 at 5). Quantem presented several pieces of summary judgment evidence. In their affidavits, Ken Allison, Quantem's CEO, (Docket Entry No. 24-5, Ex. E), and Blake Fish, Quantem's president (Docket Entry No. 24-4, Ex. D), both stated that during this conference call, the parties orally agreed to extend the closing date and continue cooperating on due diligence. (Docket Entries Nos. 24-5, Ex. E and 24-4, Ex. D). Quantem also presented the affidavit of Frank Pisano, Quantem's CFO. (Docket Entry No. 24-2, Ex. B). Pisano testified that in October, November, and December of 2015, he continued to communicate with Conservair about due diligence issues, and Conservair continued to provide requested due diligence information. (*Id.*). Quantem also attached copies of some of this correspondence. (Docket Entries No. 24-6 through 24-16, Exs. F-P).

Fish and Allison both stated in their affidavits that in December 2015 and January 2016, based on the information uncovered through Quantem's due diligence, Quantem sent Conservair two

new proposals for transaction terms that, in their view, more fairly distributed the risks. (Docket Entries No. 24-4 and 24-5; Ex. D at ¶¶ 4-9, Ex. E at ¶¶ 5-6). Both Fish and Allison stated that their discussions included the fact that the parties were still operating under the original Agreement with the modified closing date. (*Id.*). The affidavits both stated after these efforts to reach an agreement on the proposed sale, Quantem remained dissatisfied with the outcome of its due diligence and exercised its right to terminate the Agreement under ¶ 11 in February of 2016. (*Id.*). That led to Quantem's demand for the return of its $100,000 earnest money deposit.

This summary judgment dispute presents a narrow issue: whether Quantem has demonstrated a genuine factual dispute material to deciding whether the parties extended the closing date beyond September 15, 2015. Quantem argues that the parties' oral agreement to extend and subsequent course of dealing, including continued cooperation on due diligence work, give rise to a triable factual dispute on whether the Agreement was extended. Conservair argues that the summary judgment evidence would not permit a reasonable jury to find that the parties agreed to extend the closing date because the Agreement required legally effective modifications to be made in writing.

## II. The Applicable Legal Standards

### A. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

## B. Contract Modification

The parties agree that Ohio substantive law applies.[1] In cases decided under the State's common law, Ohio courts have regularly permitted parties to prove oral modifications despite no-oral-modification provisions. The cases generally state that an oral agreement to modify a contract implicitly waives the no-oral-modification clause. *See Wells Fargo Bank, N.A. v. Smith*, 2012-Ohio-1672, ¶¶ 35-49 (collecting and analyzing cases). The party seeking to prove an oral modification must show: "(1) that the alleged oral modification of the underlying contract has been acted upon by both parties; and (2) one of the parties has suffered an injury due to detrimental reliance upon the modification." *Id.* ¶ 35. Put slightly differently, "[o]ral agreements to modify a prior written agreement are binding if based upon new and separate legal consideration or, even if gratuitous, are so acted upon by the parties that a refusal to enforce the oral modifications would result in fraud to the promisee." *3637 Green Rd. Co. v. Specialized Component Sales Co.*,

---

[1] In its reply brief, Conservair notes that Quantem did not raise its modification argument in its pleadings. (Docket Entry No. 25 at 1). But Conservair does not actually claim, or provide any authority to show, that Quantem has waived the argument by that failure. Nor could it; under Ohio law, oral modification of a contract is not an affirmative defense that must be pleaded under Federal Rule of Civil Procedure 8(c). *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (substantive state law governs whether an argument is an affirmative defense for the purpose of Rule 8(c)); *Copeland Corp. v. Choice Fabricators Inc.*, 345 F. App'x 74, 78 (6th Cir. 2009) (Sutton, J.) ("Ohio treats modification as an issue of fact, not as an affirmative defense.").

6

2016-Ohio-5324, ¶ 27, 69 N.E.3d 1083, 1094 (quoting *Corsaro v. ARC Westlake Village, Inc.*, 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, 2005 WL 984502, ¶ 16) (internal quotation marks omitted).

The summary judgment evidence, analyzed against Ohio law and under the summary judgment standard, reveals factual disputes that preclude summary judgment. The analysis follows.

### III. Analysis

The facts set out in the summary judgment evidence Quantem submits and specifically cites, taken as true for summary judgment purposes, would allow a factfinder reasonably to conclude that the parties made an oral agreement to extend the closing date; that Conservair continued to cooperate with Quantem's information requests in its ongoing due diligence work; and that Conservair expressly acknowledged in December and January that the parties were still operating under the modified Asset Purchase Agreement. Quantem detrimentally relied on the modification by continuing to pursue the sale rather than exercising its right to terminate the contract by September 15, 2015 and to recoup its $100,000 payment. The summary judgment evidence also supports the inference that, under Ohio law, finding the oral agreement ineffective to modify the Agreement would work a fraud on Quantem by depriving it of its $100,000 earnest-money deposit.

Conservair's arguments to the contrary are unpersuasive. First, Conservair argues that Quantem must satisfy a heightened burden of proof—clear and convincing evidence—to succeed on its oral-modification argument. (Docket Entry No. 27 at 3).[2] According to Conservair, the Fish, Allison, and Pisano affidavits do not meet this standard. Conservair's argument on this point is an

---

[2] The parties dispute whether clear and convincing is the proper standard. The court need not decide this dispute because even under the more exacting standard, summary judgment cannot be granted.

attack on the credibility of the affidavit statements. That is a trial argument, not a summary-judgment argument. At the summary judgment stage, a court assumes the truth of the factual statements in the affidavits if they are competent summary judgment evidence. If the affiants testified at trial to the facts contained in their affidavits and a jury believed that testimony, on the present record, that jury could conclude that Quantem had satisfied its clear-and-convincing burden.

In a related argument, Conservair asks the court to disregard the affidavits as incompetent summary judgment evidence because they are "conclusory" and because they do not indicate what new closing date the parties settled on. Conservair cites *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985), for the proposition that conclusory statements in an affidavit cannot defeat summary judgment. But the affidavits are not "conclusory"; they do not state a legal conclusion or an ultimate determination and are not made solely on belief. Instead, they recite sworn facts based on the affiants' personal knowledge. It is true that the affidavits do not specify that the parties agreed on a new closing date or what that date was. But Conservair neither argues nor cites authority supporting an argument that this information is essential to make an agreement to extend valid. Ohio cases contain examples of courts enforcing contracts that do not specify precise dates for enforcement and assuming that performance must take place within time that is reasonable under all the circumstances. *See, e.g., 155 N. High Ltd. v. Cincinnati Ins. Co.*, 75 Ohio App. 3d 253, 258, 599 N.E.2d 352, 355 (Ohio Ct. App. 1991). The Asset Purchase Agreement at issue echoed this contract-law principle by providing that the parties could extend the sales closing date on "written notice by Buyer to Seller that reasonable additional time is required" for Quantem to complete its due diligence. (Docket Entry No. 24-1, Ex. A at ¶ 3.1). The written Agreement said nothing about needing a specific period for any extension. Conservair has not demonstrated why the absence of

a specific deadline to close the sale under the oral modification would entitle it to summary judgment.

Conservair also argues that the oral modification extending the sale closing date is legally ineffective because it was not accompanied by additional consideration. Assuming as true Conservair's statement that there was no added consideration to support the extension, under Ohio law, this does not affect the outcome. Under that State's law, added consideration for a contract modification is not necessary if both parties have acted on the modification and one party detrimentally relied on it. *See Wells Fargo Bank, N.A. v. Baldwin*, 2012-Ohio-3424, ¶ 18; *3637 Green Rd. Co.*, 2016-Ohio-5324, ¶ 27. Conservair presents no authority or other basis supporting its argument that the facts that Quantem proposes to prove at trial would not satisfy this standard. Quantem's competent summary-judgment evidence, taken as true, shows that the parties agreed to modify the Agreement by extending the deadline for the closing, cooperated on due-diligence work and efforts to reach an agreeable risk distribution, and expressly discussed and acknowledged the fact that the parties were still operating under the Agreement as modified. Quantem's evidence also shows (for summary-judgment purposes) that it detrimentally relied on the modification by declining to exercise its cancellation right before the deadline set in the original, unmodified Agreement. Had Quantem exercised that right by September 15, it would have been entitled to recoup the $100,000 earnest-money deposit that it had paid Conservair. To the extent that the trial factfinder believes Quantem's evidence, the present record could support a reasonable conclusion that the conditions for a valid and binding oral modification extending the sales closing date were met.

Conservair responds by contesting Quantem's characterization of the parties' course of dealing. Conservair argues that the parties' overall course of dealing indicates a shared

understanding that oral modifications were not permitted, as evidenced by the fact that, when Quantem initially sought an extension in May 2015, the parties entered into a separate written agreement specifying a new closing date. This evidence of the parties' prior course of dealing is relevant to how the parties understood the contract and whether the affiants' statements about the oral modification are credible. But Conservair's argument does not justify granting summary judgment because the record discloses genuine factual disputes about the parties' statements and conduct leading up to and after the alleged oral modification, material to determining whether that modification was made and was legally effective. Because the court must view the facts in the light most favorable to the nonmoving party, the evidence Conservair points to is not sufficient on the present record to grant summary judgment. Quantem has furnished competent summary judgment evidence that, if believed, shows that the parties orally modified the contract to extend the closing date and continued to cooperate to resolve Quantem's due diligence concerns long after the September 15, 2015 original closing date had passed.

Conservair's final argument is that the parties' actions following the lapsed September 15, 2015 closing date were negotiations toward a new contract, not an agreement extending the Asset Purchase Agreement. Conservair argues that the proposals Quantem made in December 2015 and January 2016 were so different from the parties' original understanding that the proposals amounted to "a new contract altogether," rather than a modification of the existing Agreement. (Docket Entry No. 25 at 5). Conservair does not point to summary judgment evidence supporting an inference that the parties intended to, or were, negotiating toward a new sales contract. Conservair's argument fails to account for two affidavits Quantem included in the summary judgment evidence stating that, in the course of discussing these proposals, the parties noted the fact that the original Asset Purchase

10

Agreement remained in effect and was still operative. Summary judgment on this ground is not proper.

**IV.     Conclusion**

For the reasons explained above, Conservair's motion for summary judgment, (Docket Entry No. 21), is denied. The parties must appear for docket call on July 31, 2017 at 10:00 a.m., in Courtroom 11B. The court will rule on motions in limine and, to the extent possible, on objections to exhibits. The case will likely be tried during the first two weeks of August 2017.

SIGNED on June 27, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge